**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| DENEICE O'CONNOR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>McKESSON CORPORATION,<br><br>Defendant. | **Case No. ______________________________**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Representative Plaintiff alleges as follows:

**INTRODUCTION**

1. Representative Plaintiff Deneice O'Connor ("Plaintiff") brings this Class Action Complaint against Defendant McKesson Corporation ("Defendant" or "McKesson") for its failure to properly secure and safeguard Plaintiff's and Class Members' protected health information and personally identifiable information maintained within or accessible through McKesson's information systems and third-party applications, including, upon information and belief, names, addresses, dates of birth, Social Security numbers, patient identifiers, medical record numbers, Medicaid numbers, diagnoses, medications, allergies, disabilities, appointment information, physician information, prescription information, billing information, and other sensitive healthcare data (collectively, "PHI/PII").

2. With this action, Plaintiff seeks to hold McKesson responsible for the harms caused and continuing to be caused by a massive cybersecurity incident that McKesson discovered on August 25, 2026, involving unauthorized access to third-party applications and the exfiltration of

data (the "Data Breach"). The cybercriminal group ShinyHunters has claimed responsibility and claims to have exfiltrated approximately one terabyte of data, including approximately 284 million patient-related records associated with tens of millions of patients. The precise number of unique individuals affected remains under investigation.

3. Plaintiff further seeks to hold Defendant responsible for failing to ensure that PHI/PII was maintained in a manner consistent with reasonable industry standards, applicable privacy and data-security obligations, and the safeguards reflected in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Privacy and Security Rules. Plaintiff does not assert a private cause of action under HIPAA; rather, HIPAA and related standards inform the duties and standard of care alleged herein.

4. McKesson publicly disclosed the incident on August 28, 2026, through a Form 8-K filed with the United States Securities and Exchange Commission. McKesson stated that it discovered the incident on August 25, 2026 and that its investigation was in its early stages. McKesson separately confirmed that the incident involved third-party applications, unauthorized access, and data exfiltration. As of the filing of this Complaint, McKesson has not publicly identified the full scope of affected individuals or all categories of information compromised.

5. McKesson acquired, collected, received, maintained, transmitted, and/or had access to Plaintiff's and Class Members' PHI/PII in connection with the healthcare and pharmaceutical services it provides directly and through its healthcare network and technology platforms. McKesson knew or should have known that this highly sensitive information was a valuable target for cybercriminals and required robust safeguards against social engineering, credential compromise, unauthorized cloud access, and data exfiltration.

6. HIPAA establishes national minimum standards for protecting individuals' medical records and other protected health information. HIPAA, generally, applies to health plans/insurers, healthcare clearinghouses, and those healthcare providers that conduct certain healthcare transactions electronically and sets minimum standards for Defendant's maintenance of Representative Plaintiff's and Class Members' PHI/PII. More specifically, HIPAA requires appropriate safeguards be maintained by organizations such as Defendant to protect the privacy of protected health information and sets limits and conditions on the uses and disclosures that may be made of such information without customer/patient authorization. HIPAA also establishes a series of rights over Representative Plaintiff's and Class Members' PHI/PII, including rights to examine and obtain copies of their health records and to request corrections thereto.

7. Additionally, the HIPAA Security Rule establishes national standards to protect individuals' electronic protected health information created, received, used, or maintained by a covered entity. The HIPAA Security Rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information.

8. By obtaining, collecting, using, and deriving a benefit from Representative Plaintiff's and Class Members' PHI/PII, Defendant assumed legal and equitable duties to those individuals. These duties arise from HIPAA, other state and federal statutes and regulations, and common law principles. Representative Plaintiff does not bring claims in this action for direct violations of HIPAA but charge Defendant with various legal violations merely predicated upon the duties set forth in HIPAA.

9. Defendant disregarded the rights of Plaintiff and Class Members by failing to implement and maintain adequate and reasonable safeguards to protect PHI/PII from unauthorized

access and exfiltration. According to public reporting, ShinyHunters claims it voice-phished multiple McKesson employees, compromised employee Okta single sign-on accounts, and used those credentials to access McKesson's Salesforce and Snowflake environments. The threat actor claims it exfiltrated data over approximately four days, from August 21 through August 25, 2026. These allegations, if confirmed, demonstrate failures in identity verification, access controls, authentication, monitoring, and/or detection sufficient to permit unauthorized actors to obtain access to extraordinarily sensitive patient data.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because this is a class action in which the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, the proposed Class contains more than 100 members, and at least one Class Member is a citizen of a state different from Defendant. Defendant is a Delaware corporation with its principal executive offices in Irving, Texas, while Plaintiff is a citizen of New York.

11. Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

12. This Court has personal jurisdiction over Defendant because McKesson conducts substantial and continuous business in Texas, purposefully directs healthcare, pharmaceutical, technology, and related services into Texas, maintains relationships with healthcare providers, pharmacies, and patients in Texas, and collected, maintained, transmitted, processed, and/or had access to the PHI/PII of Texas residents, including Plaintiff.

13. Venue is proper in this District Defendant transacts substantial business in this District; and a substantial part of the events and injuries giving rise to Plaintiff's claims occurred

in this District, including Defendant's collection and maintenance of Plaintiff's PHI/PII and Plaintiff's exposure to the privacy, identity-theft, medical-identity-theft, and fraud risks resulting from the Data Breach.

## PLAINTIFF'S EXPERIENCES

14. Plaintiff Deneice O'Connor is a resident and citizen of New York. Plaintiff is a patient/customer of Defendant and, in connection with the healthcare services provided to her, Defendant obtained, received, maintained, processed, transmitted, and/or had access to Plaintiff's sensitive PHI/PII.

15. Plaintiff reasonably expected that Defendant would maintain her PHI/PII in confidence and employ reasonable administrative, technical, and physical safeguards to prevent unauthorized access, acquisition, disclosure, and exfiltration. Plaintiff would not have knowingly entrusted her sensitive medical and identifying information to an entity that failed to employ reasonable data-security practices.

16. Plaintiff has taken reasonable steps to protect the confidentiality of her PHI/PII and does not knowingly make her sensitive medical, identifying, or financial information publicly available.

17. At the time of the Data Breach, Defendant maintained, processed, transmitted, and/or had access to Plaintiff's PHI/PII. Upon information and belief, Plaintiff's PHI/PII was among the patient information accessed and/or exfiltrated in the Data Breach.

18. As of the filing of this Complaint, Defendant's investigation remains ongoing and Defendant has not publicly disclosed the complete universe of affected individuals or the precise categories of information compromised for each individual. Defendant's incomplete disclosure

prevents Plaintiff from knowing the full extent to which her information has been exposed and from tailoring mitigation measures to the specific data compromised.

19. Because the attack was an intentional data-theft and extortion event, rather than an inadvertent disclosure, Plaintiff faces a substantial and concrete risk that the stolen information will be misused, sold, disseminated, or combined with other information for identity theft, medical identity theft, phishing, prescription fraud, fraudulent billing, account takeover, and other forms of fraud.

20. As a result of the Data Breach, Plaintiff has spent and will continue to spend time monitoring her accounts, medical and insurance information, and other records for signs of misuse and taking reasonable measures to protect herself from the consequences of the Data Breach. This mitigation time is valuable and has been lost forever.

21. Plaintiff suffered an invasion of privacy and loss of confidentiality when her sensitive PHI/PII was accessed and/or exfiltrated by unauthorized cybercriminals. The compromised information is private, sensitive, and immutable or difficult to change, particularly medical histories, medical record identifiers, and Social Security numbers.

22. Plaintiff has also suffered annoyance, interference, inconvenience, and increased concern regarding the loss of privacy and the risk that cybercriminals will misuse, sell, or further disseminate her PHI/PII.

23. Plaintiff faces a present and continuing risk of identity theft, medical identity theft, fraud, phishing, prescription-related scams, and other misuse because the information was allegedly exfiltrated by a known data-extortion group that demanded payment in exchange for not releasing the stolen data.

24. Plaintiff has a continuing interest in ensuring that her PHI/PII remaining in Defendant's possession, custody, or control is protected against future unauthorized access and disclosure.

Plaintiff Deneice O'Connor's Experiences

25. Plaintiff O'Connor entrusted her PHI/PII to Defendant for healthcare-related purposes and not for disclosure to cybercriminals or other unauthorized third parties.

26. Plaintiff O'Connor did not consent to Defendant disclosing or permitting unauthorized access to her PHI/PII.

27. The nature of the information reportedly taken—including patient identifiers, medical record numbers, diagnoses, medications, allergies, Medicaid numbers, Social Security numbers, and prescription and billing information—creates risks extending well beyond ordinary payment-card fraud because much of the information cannot readily be changed.

28. Plaintiff O'Connor has a reasonable need to monitor not only her credit and financial accounts, but also medical bills, insurance records, prescription activity, explanations of benefits, and other healthcare records for signs of misuse.

29. The Data Breach has diminished the confidentiality and privacy of Plaintiff O'Connor's PHI/PII and deprived her of control over information that she reasonably expected would remain private.

30. The Data Breach has caused Plaintiff O'Connor to spend time and effort responding to the incident and assessing protective measures she otherwise would not have had to undertake.

31. Plaintiff O'Connor faces continuing risk because the threat actor claims to possess the stolen data and has allegedly demanded more than $55 million from McKesson in exchange for not releasing it.

32. Plaintiff O'Connor's injuries are directly traceable to Defendant's alleged failure to prevent unauthorized access to and exfiltration of the PHI/PII entrusted to it.

33. Plaintiff O'Connor anticipates spending additional time and money on an ongoing basis to mitigate and address harms caused by the Data Breach.

34. Plaintiff O'Connor has a continuing interest in ensuring that her PHI/PII is protected and safeguarded from future breaches.

35. The Data Breach has caused Plaintiff O'Connor concern and stress regarding the confidentiality and potential misuse of her highly sensitive medical and identifying information, compounded by the fact that Defendant has not yet publicly disclosed the full scope of the Data Breach.

36. As a result of the Data Breach, Plaintiff O'Connor anticipates spending additional time and money on an ongoing basis to mitigate and address harms caused by the Data Breach.

37. As a result of the Data Breach, Plaintiff O'Connor is at a present and continuing risk of identity theft, medical identity theft, fraud, and other misuse of her PHI/PII.

38. Plaintiff O'Connor has a continuing interest in ensuring that her PHI/PII, which remains in Defendant's possession, custody, or control, is protected and safeguarded from future breaches.

## DEFENDANT

39. Defendant McKesson Corporation is a Delaware corporation with its principal executive offices at 6555 State Highway 161, Irving, Texas 75039. McKesson is one of the largest healthcare companies in the United States and operates nationwide.

40. McKesson describes itself as a diversified healthcare services leader whose businesses include pharmaceutical distribution, prescription technology solutions, medical-surgical solutions, and oncology and multispecialty services. McKesson partners with pharmacies, healthcare providers, health systems, manufacturers, biopharmaceutical companies, and others throughout the healthcare ecosystem.

41. Through its operations and technology platforms, McKesson handles and has access to enormous quantities of highly sensitive patient and healthcare information. Its Prescription Technology Solutions business connects patients, pharmacies, providers, pharmacy

benefit managers, health plans, and biopharmaceutical companies, while its other segments distribute medicines and provide technology and services supporting patient care.

42. Given the scale of its operations, the sensitivity of the information it maintains and processes, and the persistent targeting of healthcare organizations by cybercriminals, McKesson knew or should have known that it was a high-value target and that reasonable security required robust controls against phishing, social engineering, credential theft, unauthorized cloud access, and large-scale data exfiltration.

43. The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## CLASS ACTION ALLEGATIONS

44. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and the following Class and Subclass (collectively, the "Classes"):

> Nationwide Class:
> "All individuals in the United States whose PHI/PII was accessed, acquired, exfiltrated, and/or otherwise compromised as a result of the cybersecurity incident discovered by McKesson on August 25, 2026."

45. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards,

sections, groups, counsel, and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

46. In the alternative, Representative Plaintiff requests additional subclasses as necessary based on the types of PHI/PII that were compromised.

47. Representative Plaintiff reserves the right to amend the above Class definitions or to propose other subclasses in subsequent pleadings and motions for class certification.

48. This action has been brought and may properly be maintained as a class action under F.R.C.P. Rule 23 because there is a well-defined community of interest in the litigation and membership of the proposed Classes is readily ascertainable.

a. Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Classes are so numerous that joinder of all members is impractical, if not impossible. Representative Plaintiff is informed and believes and, on that basis, alleges that the total number of Class Members is in the thousands of individuals. Membership in the Classes will be determined by analysis of Defendant's records.

b. Commonality: Representative Plaintiff and the Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1) Whether Defendant had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their PHI/PII;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

6) Whether Defendant adequately, promptly and accurately informed Representative Plaintiff and Class Members that their PHI/PII had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of the PHI/PII of Representative Plaintiff and Class Members;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiff's and Class Members' PHI/PII;

11) Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct;

12) Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c. Typicality: Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes. Representative Plaintiff and all members of the Plaintiff Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d. Adequacy of Representation: Representative Plaintiff in this class action is adequate representatives of each of the Plaintiff Classes in that Representative Plaintiff has the same interest in the litigation of this case as the Class Members, are committed to the vigorous prosecution of this case and have retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the classes in their entirety. Representative Plaintiff anticipates no management difficulties in this litigation.

e. Superiority of Class Action: The damages suffered by individual Class Members are significant but may be small relative to each member's enormous expense of individual litigation. This makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Even if Class Members could afford such individual litigation, the court system could not. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might

> be dispositive of the interests of other Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately. Individualized litigation increases the delay and expense to all parties and to the court system, presented by the case's complex legal and factual issues. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court.

49. Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, so it is impracticable to bring all Class Members before the Court.

50. This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate concerning the Classes in their entireties. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly. Representative Plaintiff's challenge of these policies and procedures hinges on Defendant's conduct concerning the Classes in their entirety, not on facts or law applicable only to Representative Plaintiff.

51. Unless a Class-wide injunction is issued, Defendant may continue failing to secure Class Members' PHI/PII properly, and Defendant may continue to act unlawfully, as set forth in this Complaint.

52. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under F.R.C.P. Rule 23(b)(2).

## COMMON FACTUAL ALLEGATIONS

In August 2026, unauthorized actors gained access to McKesson systems and third-party applications and exfiltrated data. McKesson has confirmed unauthorized access and data exfiltration, while stating that its investigation remains ongoing.

53. On August 25, 2026, McKesson discovered the cybersecurity incident affecting its information systems. On August 28, 2026, McKesson disclosed the incident in a Form 8-K filed with the SEC, stating that the investigation was in its early stages and directing interested persons to its cybersecurity webpage for updates.

54. McKesson separately confirmed that the incident involved third-party applications and unauthorized access and exfiltration of data. McKesson stated that it activated incident-response protocols, launched an investigation, and engaged cybersecurity experts.

55. The cybercriminal group ShinyHunters has publicly claimed responsibility for the Data Breach. According to reporting by BleepingComputer, ShinyHunters claims it targeted multiple McKesson employees through voice-phishing attacks, compromised multiple employees' Okta single sign-on accounts, and used those credentials to access McKesson's Salesforce and Snowflake environments.

56. ShinyHunters claims it exfiltrated approximately one terabyte of data over four days, between August 21 and August 25, 2026, including information from McKesson's Salesforce environment and approximately 284 million patient-related records from Snowflake. The threat actor has clarified that 284 million refers to records or lines of data—not 284 million unique patients—and that the precise number of unique affected individuals is not yet known.

57. CyberInsider reported that ShinyHunters claims the stolen information includes names, home addresses, dates of birth, phone numbers, email addresses, Social Security numbers, patient IDs, medical record numbers, Medicaid numbers, illnesses and diagnoses, allergies,

medications, disabilities, patient notes, appointment details, physician information, hospice and terminal-illness information, causes of death, autopsy details, disease-risk assessments, prescription information, billing information, shipment information, and other highly sensitive data. CyberInsider reported that it privately reviewed samples supplied by the threat actor that appeared consistent with the categories claimed.

58. The threat actor also claims that employee information, physician and clinic information, Salesforce support records, internal communications, and certain doctor-patient communications were exfiltrated. McKesson has not yet publicly confirmed the precise data elements compromised or the number of affected individuals.

59. ShinyHunters further claims it demanded $55,236,150 from McKesson in exchange for not releasing the stolen files. The alleged extortion demand demonstrates that the Data Breach involved intentional theft of information by actors seeking to monetize the data, rather than a mere accidental exposure. McKesson's public disclosure does not identify the third-party applications involved, the precise method of initial access, the specific safeguards that failed, the full categories of data taken, or the complete population affected. Those facts remain uniquely within Defendant's knowledge and control and will be developed through discovery.

60. The reported attack path raises substantial questions concerning Defendant's identity-verification procedures, employee training, multi-factor authentication and account-recovery controls, privileged and cloud access controls, anomaly detection, data-loss prevention, and monitoring for large-scale exfiltration from cloud environments.

61. The Data Breach was foreseeable. Healthcare entities and healthcare technology companies are persistent targets for cybercriminals because they maintain valuable combinations of identity, medical, insurance, prescription, and financial information. The FBI has specifically

described ShinyHunters as a cybercriminal group specializing in large-scale data breaches and extortion.

62. McKesson was therefore required to employ security measures commensurate with the volume and sensitivity of the data entrusted to it, including controls reasonably designed to prevent social-engineering attacks from resulting in broad access to patient data and to detect and stop anomalous data exfiltration.

63. Despite those obligations, unauthorized actors were allegedly able to obtain employee credentials, access cloud environments containing extraordinarily sensitive patient information, and exfiltrate approximately one terabyte of data over several days before the incident was discovered.

64. As of the filing of this Complaint, McKesson's investigation is ongoing. The absence of complete public findings does not eliminate the present harm from the confirmed unauthorized access and exfiltration or the substantial risks created by the threat actor's claimed possession of sensitive patient data.

65. Plaintiff and Class Members have been deprived of control over their confidential PHI/PII and face the risk that the information will be published, sold, traded, or used for identity theft, medical identity theft, prescription fraud, fraudulent medical billing, phishing, account takeover, and other malicious purposes.

66. The reported combination of identity information and detailed medical information is particularly dangerous because it can enable highly targeted fraud and social engineering and because many of the compromised identifiers and medical facts cannot simply be cancelled or replaced like a payment card.

67. Defendant's failure to prevent the Data Breach and its inability, as of filing, to provide affected individuals complete information regarding the data compromised have shifted the burden of protecting against future misuse to Plaintiff and Class Members. Public sources concerning the Data Breach include McKesson Corporation's August 28, 2026 Form 8-K; BleepingComputer, "McKesson discloses breach after ShinyHunters claims patient data theft" (Aug. 28, 2026); CyberInsider, "ShinyHunters claims McKesson data breach exposing 284 million patient records" (Aug. 28, 2026); and Cybernews, "US healthcare giant McKesson breached, ShinyHunters claims 284m patient records" (Aug. 2026).

68. Defendant acquired, collected, stored, and assured reasonable security over Representative Plaintiff's and Class Members' PHI/PII.

69. As a condition of its relationships with Representative Plaintiff and Class Members, Defendant required that Representative Plaintiff and Class Members entrust Defendant with highly sensitive and confidential PHI/PII. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

70. By obtaining, collecting, and storing Representative Plaintiff's and Class Members' PHI/PII, Defendant assumed legal and equitable duties over the PHI/PII and knew or should have known that it was thereafter responsible for protecting Representative Plaintiff's and Class Members' PHI/PII from unauthorized disclosure.

71. Representative Plaintiff and Class Members have taken reasonable steps to maintain their PHI/PII's confidentiality. Representative Plaintiff and Class Members relied on Defendant to keep their PHI/PII confidential and securely maintained, to use this information for business and healthcare purposes only, and to make only authorized disclosures of this information.

72. Defendant could have prevented or materially limited the Data Breach, which the threat actor claims occurred between August 21 and August 25, 2026, by implementing and enforcing reasonable safeguards for identity verification, authentication, access control, cloud security, monitoring, data-loss prevention, and the PHI/PII maintained within or accessible through its systems.

73. Defendant's negligence in safeguarding Representative Plaintiff's and Class Members' PHI/PII is exacerbated by repeated warnings and alerts directed at protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

74. The healthcare industry has experienced many high-profile cyberattacks in the last several years preceding this Complaint's filing. Cyberattacks, generally, have become increasingly more common. More healthcare data breaches were reported in 2020 than in any other year, showing a 25% increase. According to the HIPAA Journal, the largest healthcare data breaches were reported in April 2021.

75. For example, Universal Health Services experienced a cyberattack on September 29, 2020 similar to the attack on Defendant. As a result of this attack, Universal Health Services suffered a four-week outage of its systems which caused as much as $67 million in recovery costs and lost revenue. Similarly, in 2021, Scripps Health suffered a cyberattack, which effectively shut down critical healthcare services for a month and left numerous patients unable to speak to their physicians or access vital medical and prescription records. University of San Diego Health suffered a similar attack a few months later.

76. Healthcare organizations are easy targets because "even relatively small healthcare providers may store the records of hundreds of thousands of patients. The stored data is highly detailed, including demographic data, Social Security numbers, financial information, health

insurance information, and medical and clinical data, and that information can be easily monetized."

77. The HIPAA Journal article explains that patient records, like those stolen from Defendant, are "often processed and packaged with other illegally obtained data to create full record sets (full) that contain extensive information on individuals, often in intimate detail." The record sets are then sold on dark web sites to other criminals, which "allows an identity kit to be created, which can then be sold for considerable profit to identity thieves or other criminals to support an extensive range of criminal activities."

78. Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and the U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully ward off a potential attack.

79. Due to the high-profile nature of these breaches and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in the healthcare industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack.

80. And yet, despite the prevalence of public announcements of data breaches and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiff's and Class Members' PHI/PII from being compromised.

Defendant Had a Duty to Protect the Stolen Information

81. In failing to adequately secure Plaintiff's and Class Members' sensitive data, Defendant breached duties arising under statutory and common law. HIPAA and its implementing regulations impose privacy and security obligations on covered entities and business associates that create, receive, maintain, or transmit protected health information. To the extent McKesson

acted as a covered entity and/or business associate with respect to the PHI at issue, those standards inform the duties and standard of care alleged herein. Plaintiff does not assert a private cause of action under HIPAA.

82. To the extent applicable to McKesson's role with respect to the PHI at issue, the HIPAA Privacy Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C, establish safeguards for protected health information and electronic protected health information.

83. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for protecting health information.

84. HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

85. HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

86. "Electronic protected health information" is "individually identifiable health information […] that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

87. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

88. HIPAA also requires Defendant to "review and modify the security measures implemented […] as needed to continue provision of reasonable and appropriate protection of electronic protected health information" under 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

89. Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

90. Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. See, e.g., FTC v. Wyndham Worldwide Corp., 799 F.3d 236 (3d Cir. 2015).

91. According to the FTC, the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of PHI/PII.

92. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that companies should:

a. protect the sensitive consumer information that they keep;

b. properly dispose of PHI/PII that is no longer needed;

c. encrypt information stored on computer networks;

d. understand their network's vulnerabilities; and

e. implement policies to correct security problems.

93. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

94. The FTC recommends that companies not maintain information longer than is necessary for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity on the network and verify that third-party service providers have implemented reasonable security measures.

95. The FTC has brought enforcement actions against businesses for failing to protect consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

96. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PHI/PII constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

97. In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the PHI/PII in Defendant's possession from being

compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected Representative Plaintiff's and Class Members' PHI/PII.

98. Defendant owed a duty to Representative Plaintiff and Class Members to design, maintain, and test its computer systems, servers, and networks to ensure that all PHI/PII in its possession was adequately secured and protected.

99. Defendant owed a duty to Representative Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect all PHI/PII in its possession, including not sharing information with other entities who maintain sub-standard data security systems.

100. Defendant owed a duty to Representative Plaintiff and Class Members to implement processes that would immediately detect a breach of its data security systems in a timely manner.

101. Defendant owed a duty to Representative Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

102. Defendant owed a duty to Representative Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals' PHI/PII from theft, because such an inadequacy would be a material fact in the decision to entrust this PHI/PII to Defendant.

103. Defendant owed a duty of care to Representative Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

104. Defendant owed a duty to Representative Plaintiff and Class Members to encrypt and/or more reliably encrypt Representative Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity to identify possible threats.

The Sensitive Information Stolen in the Data Breach is Highly Valuable

105. It is well known that PHI/PII, including Social Security numbers and health records in particular, is a valuable commodity and a frequent, intentional target of cybercriminals. Companies that collect such information, including Defendant, are well aware of the risk of being targeted by cybercriminals.

106. Individuals place a high value not only on their PHI/PII but also on the privacy of that data. Identity theft causes severe negative consequences to its victims, as well as severe distress and hours of lost time trying to fight the impact of identity theft.

107. While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a lot of sensitive information (e.g., patient data, patient diagnosis, lab results, medications, prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, PHI/PII is a valuable commodity for which a "cyber black market" exists where criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites. Unsurprisingly, the healthcare industry is at high risk and is acutely affected by cyberattacks, like the Data Breach here.

108. The high value of PHI/PII to criminals is evidenced by the prices they will pay for it through the dark web. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200. Experian reports that a stolen

credit or debit card number can sell for $5 to $110 on the dark web. Criminals can also purchase access to entire company data breaches from $999 to $4,995.

109. Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches. Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches. In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.

110. These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiff and Class Members. For example, it is believed that certain PHI/PII compromised in the 2017 Experian data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

111. The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government-issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

112. Identity thieves can use PHI/PII, such as that of Representative Plaintiff and Class Members which Defendant failed to keep secure, to perpetrate various crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration

fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

113. The ramifications of Defendant's failure to secure Representative Plaintiff's and Class Members' PHI/PII are long-lasting and severe. Once PHI/PII is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, the PHI/PII of Representative Plaintiff and Class Members was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the PHI/PII for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

114. Individuals, like Representative Plaintiff and Class Members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and are likened to accessing DNA for hacker's purposes.

115. Data breach victims suffer long-term consequences when their Social Security numbers are taken and used by hackers. Even if they know their Social Security numbers are being misused, Representative Plaintiff and Class Members cannot obtain new numbers unless they become victims of Social Security misuse.

116. The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same."

117. There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

118. The harm to Representative Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," more than identity thefts involving banking and finance, the government, and the military or education.

119. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."

120. When cybercriminals access financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiff and Class Members.

121. A study by Experian found that the average cost of medical identity theft is "about $20,000" per incident and that most victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive to restore coverage. Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third of

medical identity theft victims saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all.

122. And data breaches are preventable. As Lucy Thompson wrote in the Data Breach and Encryption Handbook, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions." She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."

123. Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures. Appropriate information security controls, including encryption, must be implemented and enforced rigorously and disciplined so that a data breach never occurs.

124. Here, Defendant knew of the importance of safeguarding PHI/PII and of the foreseeable consequences that would occur if Representative Plaintiff's and Class Members' PHI/PII was stolen, including the significant costs that would be placed on Representative Plaintiff and Class Members because of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols was necessary to fulfill its statutory and common law duties to Representative Plaintiff and Class Members. Therefore, its failure to do so is intentional, willful, reckless, and/or grossly negligent.

125. As of the filing of this Complaint, Defendant has not publicly announced comprehensive identity-theft or medical-identity-theft monitoring for all persons whose PHI/PII was compromised in the Data Breach, nor has it publicly identified the complete affected population.

126. The incomplete information presently available shifts substantial mitigation burdens to Plaintiff and Class Members, who must remain vigilant for identity theft, medical identity theft, fraudulent billing, prescription-related fraud, phishing, and other misuse while Defendant's investigation remains ongoing.

127. Any limited or temporary monitoring ultimately offered would not fully compensate Plaintiff and Class Members for the unauthorized access and exfiltration of their PHI/PII or eliminate the long-term risks associated with immutable medical and identifying information.

128. Defendant disregarded the rights of Representative Plaintiff and Class Members by, inter alia: (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequate security protocols and training practices in place to safeguard Representative Plaintiff's and Class Members' PHI/PII, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiff and Class Members prompt and accurate notice of the Data Breach.

## CAUSES OF ACTION

### COUNT ONE
### Negligence
### (On behalf of the Nationwide Class)

129. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

130. At all times herein relevant, Defendant owed Representative Plaintiff and Class Members a duty of care, inter alia, to act with reasonable care to secure and safeguard their PHI/PII

and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Representative Plaintiff's and Class Members' PHI/PII on its computer systems and networks.

131. Among these duties, Defendant was expected:

a. to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the PHI/PII in its possession;

b. to protect Representative Plaintiff's and Class Members' PHI/PII using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c. to implement processes to detect the Data Breach quickly and to act on warnings about data breaches timely; and

d. to promptly notify Representative Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their PHI/PII.

132. Defendant knew or should have known that the PHI/PII was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care to not subject Representative Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

133. Defendant knew or should have known of the risks inherent in collecting and storing PHI/PII, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew or should have known about numerous well-publicized data breaches.

134. Defendant knew or should have known that its data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' PHI/PII.

135. Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the PHI/PII that Representative Plaintiff and Class Members had entrusted to it.

136. Defendant breached its duties to Representative Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their PHI/PII.

137. Because Defendant knew that a breach of its systems could damage numerous individuals, including Representative Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the PHI/PII stored thereon.

138. Representative Plaintiff's and Class Members' willingness to entrust Defendant with their PHI/PII was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant could protect its systems and the PHI/PII it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiff and Class Members.

139. Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiff's and Class Members' PHI/PII and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Representative Plaintiff, and/or the remaining Class Members.

140. Defendant breached its general duty of care to Representative Plaintiff and Class Members in, but not necessarily limited to, the following ways:

a. by failing to provide fair, reasonable and/or adequate computer systems and data security practices to safeguard Representative Plaintiff's and Class Members' PHI/PII;

b. by failing to timely and accurately disclose that Representative Plaintiff's and Class Members' PHI/PII had been improperly acquired or accessed;

c. by failing to adequately protect and safeguard PHI/PII by knowingly disregarding standard information security principles, despite obvious risks and by allowing unmonitored and unrestricted access to unsecured PHI/PII;

d. by failing to provide adequate supervision and oversight of the PHI/PII with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party

to gather Representative Plaintiff's and Class Members' PHI/PII, misuse the PHI/PII and intentionally disclose it to others without consent;

e. by failing to adequately train its employees not to store PHI/PII longer than absolutely necessary;

f. by failing to consistently enforce security policies aimed at protecting Representative Plaintiff's and Class Members' PHI/PII;

g. by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h. by failing to encrypt Representative Plaintiff's and Class Members' PHI/PII and monitor user behavior and activity in order to identify possible threats.

141. Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

142. As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harm and damages (as alleged above).

143. The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the PHI/PII to Representative Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their PHI/PII.

144. Defendant has not yet provided Plaintiff and Class Members complete and individualized information concerning the unauthorized access and exfiltration, including the specific data elements compromised for each person. To date, Defendant's public disclosures state that the investigation remains ongoing and do not identify the full scope of affected individuals or information.

145. Further, explicitly failing to provide timely and clear notification of the Data Breach to Representative Plaintiff and Class Members, Defendant prevented Representative Plaintiff and

Class Members from taking meaningful, proactive steps to secure their PHI/PII and access their medical records and histories.

146. There is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiff's and Class Members' PHI/PII and the harm (or risk of imminent harm suffered) by Representative Plaintiff and Class Members. Representative Plaintiff's and Class Members' PHI/PII was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such PHI/PII by adopting, implementing and maintaining appropriate security measures.

147. Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

148. The damages Representative Plaintiff and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

149. Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PHI/PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

150. Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect PHI/PII and by not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiff and Class Members.

151. Defendant's violation of 15 U.S.C. § 45 constitutes negligence per se. Defendant also violated the HIPAA Privacy and Security rules, which constitutes negligence per se.

152. As a direct and proximate result of Defendant's negligence and negligence per se, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of the opportunity of how their PHI/PII is used, (iii) the compromise, publication, and/or theft of their PHI/PII, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud, and/or unauthorized use of their PHI/PII, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft, (vi) lost continuity in relation to their healthcare, (vii) the continued risk to their PHI/PII, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' PHI/PII in its continued possession, and (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

153. As a direct and proximate result of Defendant's negligence and negligence per se, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including but not limited to anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

154. Additionally, as a direct and proximate result of Defendant's negligence and negligence per se, Representative Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PHI/PII in its continued possession.

COUNT TWO
Negligence Per Se
(On behalf of the Nationwide Class)

155. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

156. HIPAA requires that covered entities and business associates "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information" and "must reasonably safeguard protected health information from any intentional or unintentional use or disclosure…." 45 CFR § 164.530I.

157. The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414 requires HIPAA covered entities and their business associates to provide notification to the United States Department of Health and Human Services, prominent media outlets following a data breach or any breach of unsecured protected health information without unreasonable delay and in no event later than 60 days after discovery of a data breach.

158. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 prohibits companies such as Defendant from "using any unfair method of competition or unfair or deceptive act or practice in or affecting commerce," including failing to use reasonable measures to protect PHI/PII. In addition to the FTC Act, the agency also enforces other federal laws relating to consumers' privacy and security. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

159. In addition to the FTC rules and regulations and state law, other states and jurisdictions where victims of the Data Breach are located require that Defendant protect PHI/PII from unauthorized access and disclosure and timely notify the victim of a data breach.

160. Defendant violated HIPAA and FTC rules and regulations obligating companies to use reasonable measures to protect PHI/PII by failing to comply with applicable industry standards and by unduly delaying reasonable notice of the actual breach. Defendant's conduct was particularly unreasonable given the nature and amount of PHI/PII it obtained and stored and the foreseeable consequences of a Data Breach and the exposure of Representative Plaintiff's and Class members' highly sensitive PHI/PII.

161. Each of Defendant's statutory violations of HIPAA, Section 5 of the FTC Act and other applicable statutes, rules and regulations, constitute negligence per se.

162. Representative Plaintiff and Class Members are within the category of persons HIPAA and the FTC Act were intended to protect.

163. The harm that occurred because of the Data Breach described herein is the type of harm HIPAA and the FTC Act were intended to guard against.

164. As a direct and proximate result of Defendant's negligence per se, Representative Plaintiff and Class Members have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their PHI/PII in Defendant's possession and are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## Breach of Confidence
## (On behalf of the Nationwide Class)

165. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

166. During Representative Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential nature of the PHI/PII that Representative Plaintiff and Class Members provided to it.

167. As alleged herein and above, Defendant's relationship with Representative Plaintiff and Class Members was governed by promises and expectations that Representative Plaintiff and Class Members' PHI/PII would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

168. Representative Plaintiff and Class Members provided their respective PHI/PII to Defendant with the explicit and implicit understandings that Defendant would protect and not permit the PHI/PII to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

169. Representative Plaintiff and Class Members also provided their PHI/PII to Defendant with the explicit and implicit understanding that Defendant would take precautions to protect their PHI/PII from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting its networks and data systems.

170. Defendant voluntarily received, in confidence, Representative Plaintiff's and Class Members' PHI/PII with the understanding that the PHI/PII would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

171. Due to Defendant's failure to prevent, detect and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Representative

Plaintiff's and Class Members' PHI/PII, Representative Plaintiff's and Class Members' PHI/PII was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Representative Plaintiff's and Class Members' confidence and without their express permission.

172. As a direct and proximate cause of Defendant's actions and/or omissions, Representative Plaintiff and Class Members have suffered damages, as alleged herein.

173. But for Defendant's failure to maintain and protect Representative Plaintiff's and Class Members' PHI/PII in violation of the parties' understanding of confidence, their PHI/PII would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. The Data Breach was the direct and legal cause of the misuse of Representative Plaintiff's and Class Members' PHI/PII and the resulting damages.

174. The injury and harm Representative Plaintiff and Class Members suffered and will continue to suffer was the reasonably foreseeable result of Defendant's unauthorized misuse of Representative Plaintiff's and Class Members' PHI/PII. Defendant knew its data systems and protocols for accepting and securing Representative Plaintiff's and Class Members' PHI/PII had security and other vulnerabilities that placed Representative Plaintiff's and Class Members' PHI/PII in jeopardy.

175. As a direct and proximate result of Defendant's breaches of confidence, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, as alleged herein, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PHI/PII, (iii) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft and/or unauthorized use of their PHI/PII,

(iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (v) the continued risk to their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Class Members' PHI/PII in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members, (vii) the diminished value of Representative Plaintiff's and Class Members' PHI/PII, and (viii) the diminished value of Defendant's services for which Representative Plaintiff and Class Members paid and received.

## COUNT FOUR
## Breach of Implied Contract
## (On behalf of the Nationwide Class)

176. Each and every allegation of paragraphs X – X is incorporated in this Count with the same force and effect as though fully set forth herein.

177. Through their course of conduct, Defendant, Representative Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' PHI/PII.

178. Defendant required Representative Plaintiff and Class Members to provide and entrust her PHI/PII as a condition of obtaining Defendant's services.

179. Defendant solicited and invited Representative Plaintiff and Class Members to provide their PHI/PII as part of Defendant's regular business practices. Representative Plaintiff and Class Members accepted Defendant's offers and provided their PHI/PII to Defendant.

180. As a condition of being Defendant's direct patients, Representative Plaintiff and Class Members provided and entrusted their PHI/PII to Defendant. In so doing, Representative

Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify Representative Plaintiff and Class Members if their data had been breached and compromised or stolen.

181. A meeting of the minds occurred when Representative Plaintiff and Class Members agreed to, and did, provide their PHI/PII to Defendant, in exchange for, amongst other things, the protection of their PHI/PII.

182. Representative Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

183. Defendant breached the implied contracts it made with Representative Plaintiff and Class Members by failing to safeguard and protect their PHI/PII and by failing to provide timely and accurate notice to them that their PHI/PII was compromised because of the Data Breach.

As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiff and Class Members have suffered and will continue to suffer: (i) ongoing, imminent and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and non-economic harm.

## COUNT FIVE
### Breach of the Implied Covenant of Good Faith and Fair Dealing
### (On behalf of the Nationwide Class)

184. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

185. Every contract applicable to the parties has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

186. Representative Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

187. Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard PHI/PII, failing to timely and accurately disclose the Data Breach to Representative Plaintiff and Class Members, and continued acceptance of PHI/PII and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

188. Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

COUNT SIX
Breach of Fiduciary Duty
(On behalf of the Nationwide Class)

189. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

190. In light of the special relationship between Defendant and Representative Plaintiff and Class Members, whereby Defendant became the guardian of Representative Plaintiff's and Class Members' PHI/PII, Defendant became a fiduciary by its undertaking and guardianship of the PHI/PII to act primarily for Representative Plaintiff and Class Members, (i) for the safeguarding of Representative Plaintiff's and Class Members' PHI/PII, (ii) to timely notify Representative Plaintiff and Class Members of a data breach and disclosure, and (iii) to maintain

complete and accurate records of what information (and where) Defendant did has and continues to store.

191. Defendant has a fiduciary duty to act for the benefit of Representative Plaintiff and Class Members upon matters within the scope of its relationship with its customers' patients and former patients—in particular, to keep their PHI/PII secure.

192. Defendant breached its fiduciary duties to Representative Plaintiff and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period of time.

193. Defendant breached its fiduciary duties to Representative Plaintiff and Class Members by failing to encrypt and otherwise protect the integrity of the systems containing Representative Plaintiff's and Class Members' PHI/PII.

194. Defendant breached its fiduciary duties to Representative Plaintiff and Class Members by failing to timely notify and/or warn Representative Plaintiff and Class Members of the Data Breach.

195. Defendant breached its fiduciary duties to Representative Plaintiff and Class Members by otherwise failing to safeguard Representative Plaintiff's and Class Members' PHI/PII.

196. As a direct and proximate result of Defendant's breaches of its fiduciary duties, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the compromise, publication, and/or theft of their PHI/PII, (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their PHI/PII, (iv) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate

the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, contest, and recover from identity theft, (v) the continued risk to their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PHI/PII in its continued possession, (vi) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members, and (vii) the diminished value of Defendant's services they received.

197. As a direct and proximate result of Defendant's breach of its fiduciary duties, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

COUNT SEVEN
Unjust Enrichment
(On behalf of the Nationwide Class)

198. Each and every allegation of paragraphs 1 – 128 is incorporated in this Count with the same force and effect as though fully set forth herein.

199. Upon information and belief, Defendant funds its data-security measures entirely from its general revenue, including payments made by or on behalf of Representative Plaintiff and Class Members.

200. As such, a portion of the payments made by or on behalf of Representative Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of each payment allocated to data security is known to Defendant.

201. Representative Plaintiff and Class Members conferred a monetary benefit to Defendant. Specifically, they purchased goods and services from Defendant and/or its agents and provided Defendant with their PHI/PII. In exchange, Representative Plaintiff and Class Members

should have received from Defendant the goods and services that were the subject of the transaction and have their PHI/PII protected with adequate data security.

202. Defendant knew that Representative Plaintiff and Class Members conferred a benefit which Defendant accepted. Defendant profited from these transactions and used the PHI/PII of Representative Plaintiff and Class Members for business purposes.

203. Defendant enriched itself by saving the costs it reasonably should have expended in data-security measures to secure Representative Plaintiff's and Class Members' PHI/PII. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profits at the expense of Representative Plaintiff and Class Members by utilizing cheaper, ineffective security measures. On the other hand, Representative Plaintiff and Class Members suffered as a direct and proximate result of Defendant's decision to prioritize its profits over the requisite security.

204. Under the principles of equity and good conscience, Defendant should not be permitted to retain the money belonging to Representative Plaintiff and Class Members, because Defendant failed to implement appropriate data management and security measures mandated by industry standards.

205. Defendant failed to secure Representative Plaintiff's and Class Members' PHI/PII and, therefore, did not provide full compensation for the benefit of Representative Plaintiff and Class Members.

206. Defendant acquired the PHI/PII through inequitable means in that it failed to disclose the inadequate security practices previously alleged.

207. If Representative Plaintiff and Class Members knew that Defendant had not reasonably secured their PHI/PII, they would not have agreed to provide their PHI/PII to Defendant.

208. Representative Plaintiff and Class Members have no remedy at law.

209. As a direct and proximate result of Defendant's conduct, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including but not limited to: (i) actual identity theft, (ii) the loss of opportunity to determine how their PHI/PII is used, (iii) the compromise, publication, and/or theft of their PHI/PII, (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PHI/PII, (v) lost opportunity costs associated with efforts expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft, (vi) the continued risk to their PHI/PII, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PHI/PII in its continued possession, and (vii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest, and repair the impact of the PHI/PII compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

210. As a direct and proximate result of Defendant's conduct, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

211. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Representative Plaintiff and Class Members, proceeds that it unjustly

received from them. In the alternative, Defendant should be compelled to refund the amounts that Representative Plaintiff and Class Members overpaid for Defendant's services.

## RELIEF SOUGHT

WHEREFORE, Representative Plaintiff, on behalf of themselves and each member of the proposed National Class respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify each of the proposed classes and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Representative Plaintiff's counsel as Class Counsel;

2. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3. That the Court enjoin Defendant, ordering it to cease and desist from similar unlawful activities;

4. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiff's and Class Members' PHI/PII, and from refusing to issue prompt, complete, and accurate disclosures to Representative Plaintiff and Class Members;

5. For injunctive relief requested by Representative Plaintiff, including but not limited to injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiff and Class Members, including but not limited to an Order:

   a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

b. requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

c. requiring Defendant to delete and purge Representative Plaintiff's and Class Members' PHI/PII unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiff and Class Members;

d. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiff's and Class Members' PHI/PII;

e. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis;

f. prohibiting Defendant from maintaining Representative Plaintiff's and Class Members' PHI/PII on a cloud-based database;

g. requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h. requiring Defendant to conduct regular database scanning and securing checks;

i. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PHI/PII, as well as protecting the PHI/PII of Representative Plaintiff and Class Members;

j. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k. requiring Defendant to implement, maintain, review and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested and updated;

l. requiring Defendant to meaningfully educate all Class Members about the threats they face as a result of the loss of their confidential PHI/PII to third parties, as well as the steps affected individuals must take to protect themselves.

6. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7. For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

8. For all other Orders, findings and determinations identified and sought in this Complaint.

JURY DEMAND

Representative Plaintiff, individually and on behalf of the Plaintiff Class(es) and/or Subclass(es), hereby demand a trial by jury for all issues triable by jury.

Dated: August 29, 2026

By: /s/ Leigh Montgomery
Leigh S. Montgomery
Texas Bar No. 24052214
ELLZEY KHERKHER SANFORD MONTGOMERY, LLP
5621 Arch Bridge Ct.
Arlington, Texas 77006
Phone: (888) 350-3931
lmontgomery@eksm.com

Daniel Srourian, Esq.*
SROURIAN LAW FIRM, P.C.
468 N. Camden Dr. Suite 200
Beverly Hills, California 90210
Telephone: (213) 474-3800
Email: daniel@slfla.com

Counsel for Representative Plaintiff and the Proposed Class(es)

**pro hac vice forthcoming*